WILLIAM ROSE *vs.* BETTY JACOBSON, administratrix.

Middlesex.    November 5, 1935. — January 2, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Contract*, What constitutes, Performance and breach. *Mortgage*, Of real estate: foreclosure.

A conditional promise of a mortgagee not to foreclose the mortgage did not bind him unless the condition was performed.

CONTRACT OR TORT.    Writ dated October 15, 1930.

The plaintiff waived all counts of the declaration except a count for breach of contract, described in the opinion.. The action was tried in the Superior Court before *Macleod*, J. There was a verdict for the plaintiff in the sum of $750.    The defendant alleged exceptions.

*I. N. Samuels*, for the defendant.

*R. B. Owen*, for the plaintiff.

CROSBY, J.    This is an action of contract or tort originally brought against one Benjamin Weisman to recover damages alleged to have been sustained by the plaintiff as a result of the foreclosure, by Weisman, of a certain mortgage, in viola-

tion of an alleged agreement not to foreclose the mortgage. During the pendency of the proceedings Weisman died, and by leave of court the plaintiff was allowed to substitute as the defendant the administratrix of the estate of Weisman. At the close of the evidence the defendant presented a motion in writing for a directed verdict in her favor. The motion was denied and the defendant excepted. The defendant expressly waived any defence based on the statute of frauds. The jury found for the plaintiff.

It is recited in the defendant's substitute bill of exceptions that there was testimony tending to show that prior to July 25, 1930, the plaintiff was the owner of three lots of land with the buildings thereon, situated on Peters Street in Cambridge, on which there was a mortgage given by the plaintiff to Weisman. This mortgage was subject to a first mortgage on one parcel, and to another first mortgage covering the other two parcels. On July 25, 1930, Weisman took possession of all the lots for the purpose of foreclosing his mortgage, and on August 25, 1930, he sold the lots in the exercise of the power of sale contained in the mortgage.

The plaintiff testified that all payments of interest and principal due to the first mortgagee, the Cambridge Savings Bank, were paid in July, 1930, the first payment due thereafter to the bank being an interest payment on August 10, 1930; that there was no default in the payments on his second mortgage to Weisman prior to July, 1930; that during that month he paid $92 to Weisman in full of the monthly interest, but was short by about $40 in the monthly payment due on the principal, which had been reduced to about $83 per month; that at the time the $92 was paid, which was about July 16, Weisman told him that everything was all right; that about that time the plaintiff told Weisman that he was going to Portugal to be gone about six weeks; that Weisman told him he should leave $400 with Weisman so that the latter could take care of the payment due on August 10 to the savings bank as first mortgagee, everything would be all right and he (Weisman) would take care of the first mortgage; that the plaintiff protested on the ground that he had expended over $2,000 on the property

since 1929; "that Weisman said, 'Rose, you get the $400, so everything will be all right, so you can go all right and I will take care of the first mortgage for you because I would rather do it that way'; that he replied, 'If that is the way you feel probably I had better not go. I don't want to lose the houses'; that Weisman said, 'I don't want the houses, what I want is the money and bonus' and also said that he wanted to have the $400 in his pocket, that everything would be all right and I could go along and if I obtained money from the sale of my mother's house in Portugal he would discharge his mortgage for from $1,500 to $2,000 less than its face value." The plaintiff further testified "that he relied on the arrangement that had been made that everything would be all right until he came back; that he would not have left this country if he thought Weisman was going to take the property away but would have remained to fix things up; that, on or about July 19, the day before he sailed, he arranged to meet Weisman at the office of one Zintz who was Weisman's lawyer and his lawyer at that time; that the plaintiff at that time had $200 in cash; that Weisman asked him whether he had $400 and he said no, he had only $200, but he would try to get the other for Weisman and couldn't he, Weisman, get along with the $200; that Weisman said no, he had to have $400; that thereupon the plaintiff said that he would try to get it from the Portuguese Credit Union, borrow $200; that Weisman said, 'You get the other $200,' and then grabbed the $200 that the plaintiff had and put it in his pocket; that the plaintiff told Weisman that he was going to make arrangements for the other $200; that Weisman put the $200 that he brought there in cash in his pocket." The witness was then asked: "Did he ever tell you the arrangements was off in any way?" and he answered: "He told me all right when he receives the other $200." On cross-examination the plaintiff testified "that Weisman didn't care whether the plaintiff paid him at that time the balance then owing to him but was interested only in having the plaintiff keep up the property and make the trip to Portugal so as to obtain money from the sale of the house which could be paid over to Weisman; that he told

Weisman that he would get the other $200 through the Portuguese Credit Union; 'my wife would get the money,' and Weisman said, 'All right, Rose, as long as you get the money everything is all right, you go right along.'" The witness was then asked: "Didn't Weisman go out of the office in a huff, so to speak?" and he replied: "Not much. He said he would like to have the money, the other $200." He was then asked: "He said he wanted the other $200, didn't he?" and he answered: "He said to me, 'Rose, before you leave, as long as I get the other $200, send it by your wife or somebody I am satisfied, you can go away all right, everything is all right.'" The plaintiff further testified that "Weisman pocketed the $200 and went out of the office; that the plaintiff arranged to borrow the money from the Portuguese Credit Union and sailed for Portugal July 27 [20?] 1930; and that he returned in about six weeks and found that the property had been foreclosed."

There was testimony to the effect that the additional $200 was deposited with Zintz on August 5, 1930, by one Silva, acting for the plaintiff, with instructions to pay the money to Weisman; that Zintz upon receiving the money tried without success for several days to communicate with Weisman and then learned that on July 25, 1930, he had taken possession of the mortgaged premises for the purpose of foreclosure. Zintz testified that when he learned Weisman had taken possession of the property and had advertised it for sale for the purpose of foreclosure he returned the deposit of $200. There was evidence that Weisman sold the property on August 25, 1930, while the plaintiff was in Portugal, and that he purchased it at foreclosure sale. The plaintiff also testified on cross-examination that after he returned from Portugal he did not pay, tender, or offer to Weisman any sum of money.

The judge instructed the jury that the plaintiff to prevail must satisfy them by the greater weight of the evidence that on or about July 19, 1930, he paid Weisman $200 to be applied toward the payment of $400 due from the plaintiff to the first mortgagee on August 10, 1930; that an agreement was entered into between the plaintiff and Weis-

man by which the latter agreed to let matters remain *in statu quo* during the period of six or eight weeks of the plaintiff's absence in Europe; "and that said agreement was made in consideration of said payment of $200 and the promise of the plaintiff to pay Weisman the remaining $200 before the due date thereof . . . that the plaintiff could not prevail if the agreement contemplated the payment of the balance of $200 to Weisman prior to the plaintiff's departure for Europe, but that the plaintiff must show that Weisman agreed to accept such payment some time before August 10, 1930, and that he himself either performed his part of the agreement or was excused therefrom by a prior breach of the agreement on the part of Weisman." It was agreed by counsel that unless some special agreement was made on or after July 16, 1930, which the plaintiff was entitled to rely on, the foreclosure was legally valid. The defendant excepted to the denial of her motion for a directed verdict.

The original defendant, Benjamin Weisman, having deceased before the trial of this action, the question whether the plaintiff is entitled to recover depends principally upon his own testimony. It appears from the uncontradicted testimony of the plaintiff that the agreement resulted from the conversation which he had with Weisman on July 16, 1930. It is apparent from that conversation that Weisman wanted to make sure that the interest due the savings bank on its mortgage on August 10 would be paid when due. The payment of that interest when due was a matter in which Weisman personally had a vital interest. The conversation between the parties as testified to by the plaintiff shows that Weisman did not want the plaintiff to leave the country to be gone several weeks without leaving sufficient funds to pay that interest. It is a reasonable inference that it was understood by the parties that the plaintiff should pay over $400 to Weisman before he, the plaintiff, sailed for Portugal. The only other conversation between the plaintiff and Weisman was on or about July 19, the day before the plaintiff sailed. At that time Weisman asked the plaintiff if he had the $400. The plaintiff said

he only had $200. He tried to induce Weisman to take $200, but Weisman insisted that he must have $400 to pay the interest due the savings bank. The amount of the interest which was to become due the savings bank on August 10 does not appear by any direct evidence; it may reasonably be inferred, however, from the conversation of the parties as testified to by the plaintiff that it was $400. The only conversations between the plaintiff and Weisman as shown by the testimony of the plaintiff occurred on July 16, 1930, and on July 19, three days later. The conversation between the plaintiff and Weisman on July 19 related to the agreement of July 16 when the plaintiff agreed to pay Weisman $400 to make the interest payment to the bank on August 10. There is no evidence to show that there was any special agreement made by the parties after July 16, 1930. There is no evidence that the parties met after that date, except the meeting at the office of Zintz, who, the plaintiff testified, was his lawyer and also was Weisman's lawyer at that time. At the meeting of July 19, 1930, the day before the plaintiff sailed, the original agreement was not changed in any way, but remained as originally entered into by the parties.

It follows that the defendant's motion for a directed verdict in her favor should have been granted.

*Exceptions sustained.*